In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1479

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

NORBERTO ARAUJO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 374-1—**Ronald A. Guzmán**, *Judge*.

ARGUED FEBRUARY 18, 2010—DECIDED SEPTEMBER 23, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE and
ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Norberto Araujo entered into
a plea agreement with the government in which he
both acknowledged that his heroin trafficking involved
a quantity of 30 or more kilograms of heroin and yet
reserved the right to assert that he should be held to
account for a lesser amount. He subsequently objected
to the probation officer's proposed finding that he was

responsible for at least 30 kilograms of heroin, arguing that the evidence warranted a finding that his trafficking involved more than 10 but less than 30 kilograms. In response to the objection, the government cited, among other evidence, Araujo's earlier proffer statement, in which Araujo had acknowledged the distribution of more than 30 kilograms of heroin. Based on Araujo's factual admission in the plea agreement, his proffer, and alternatively based on independent evidence concerning the extent of his trafficking, the district court concluded that Araujo was responsible for distributing at least 30 kilograms of heroin. That finding triggered an advisory sentencing range of 235 to 293 months in prison. The court sentenced Araujo to the minimum recommended term of 235 months. Araujo appeals, contending that the plea agreement is unavoidably ambiguous on the subject of the drug quantity, that it was improper for the government and, in turn, the court to rely on his proffer to establish the drug quantity, and that the evidence otherwise did not support a finding that he trafficked in at least 30 kilograms of heroin. We affirm.

**I.**

Araujo and his son Steven were arrested on June 6, 2007, shortly after they supplied 177 grams of heroin to a person ("Individual B") who was cooperating with the authorities. Araujo had supplied the same individual 89 grams and 143 grams of heroin in the preceding two weeks. Following their arrest, both father and son made statements to law enforcement agents in which they

acknowledged their involvement in heroin trafficking. Norberto Araujo confessed not only to the June 6 sale to the cooperating individual but to a nine-year history of drug trafficking. He disclosed that he had more than one source of heroin: he had obtained 1.3 kilograms of heroin from one organization approximately two months before his arrest and had placed an order for an additional two kilograms from the same source; and from a second individual he had obtained 300 to 400 grams of heroin monthly for about one year. Araujo in turn had distributed heroin to multiple customers: he had sold the narcotic to an individual named "Spinks" (Individual B) for nine years, in amounts ranging from 28 to 200 grams; and he had sold 25- to 175-gram quantities "straight from the brick" (i.e., undiluted, directly from a kilogram) to "Ray" every ten days. Araujo indicated that he had other customers as well, although he usually diluted the heroin with a cutting agent before distributing to those individuals. Like his father, Steven Araujo admitted the June 6 sale. He told the authorities that his father had stopped working (legitimately) in 1997 or 1998.

A grand jury indicted Araujo on charges that he conspired with his son and others to possess heroin with the intent to distribute, *see* 21 U.S.C. § 846, knowingly and intentionally distributed heroin, *see* 21 U.S.C. § 841(a)(1), and possessed heroin with the intent to distribute, *see id.* Araujo would ultimately plead guilty to the conspiracy charge.

In the course of negotiating his guilty plea, Araujo agreed to make a proffer of the facts underlying his

criminal activity. The terms of the proffer were set forth in a letter that the government's counsel sent to Araujo's lawyer. R. 83-1. Araujo's counsel was admonished that "if your client should subsequently testify contrary to the substance of the proffer, or otherwise present a position inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer at sentencing for any purpose . . . ." R. 83-1 at 1. Both Araujo and his counsel acknowledged and consented to this and the other terms of the proffer by signing the letter. When Araujo subsequently made the proffer, he indicated among other things that he had distributed in excess of 30 kilograms of heroin over the course of his drug-dealing.

Within days of the proffer, Araujo entered into a written plea agreement with the government pursuant to which he would plead guilty to the conspiracy charge. R. 38. The agreement included a three-page "factual basis" in which Araujo admitted "that from at least as early as in or about 1998, and continuing until on or about June 6, 2007, defendant was involved in the distribution of wholesale quantities of heroin to others, including Individuals B and C, at locations in Berwyn, Melrose Park, Harwood Heights, Chicago, Illinois and elsewhere." R. 38 at 3. The final sentence of the factual summary stated, "The amount of heroin that was distributed during the course of the conspiracy and that was reasonably foreseeable to defendant was at least 30 kilograms." R. 38 at 4. Although that unequivocal statement on its face appeared to resolve the drug quantity for which Araujo was responsible, the agreement else-

where treated the relevant drug quantity as if it remained an open question. Specifically:

> The government believes the amount of heroin involved in the offense of conviction and relevant conduct for which the defendant is accountable is over 30 kilograms. Therefore, pursuant to Guideline § 2D1.1(a)(3) and § 2D1.1(c)(1), the government believes the base offense level is level thirty-eight. The defendant reserves the right to assert that the amount of heroin involved in the offense of conviction and relevant conduct for which the defendant is accountable is between 10 and 30 kilograms of heroin and that the base offense level is therefore thirty-six pursuant to Guideline § 2D1.1(a)(3) and § 2D1.1(c)(2).

R. 38 at 6 ¶ 9(b)(i). We are told that this provision was added to the agreement at the eleventh hour at the request of Araujo and his counsel. Apparently, little thought was given to how Araujo's reservation of rights with respect to the drug quantity squared with the agreement's unqualified factual statement that the conspiracy to which he was pleading guilty entailed the distribution of at least 30 kilograms of heroin and that this amount was reasonably foreseeable to him.

Araujo pleaded guilty before the district judge on the day after he signed the plea agreement. During the plea colloquy, when the government was asked to recite the key facts supporting the plea, the prosecutor stated generally that Araujo had, in concert with others, distributed wholesale quantities of heroin from about 1998

until the date of his arrest in June 2007 and more specifi-
cally that he had sold 89 grams, 143 grams, and then 177
grams heroin to the cooperating individual on three
occasions in the run-up to his arrest. R. 106 at 15-17. The
court asked Araujo if these representations were
true and Araujo said that they were. R. 106 at 17-18.
But the total quantity of heroin for which Araujo was
responsible was not addressed. The court accepted
Araujo's change of plea, and the case was continued
for a presentence investigation and sentencing.

Steven Araujo also pleaded guilty to the conspiracy
charge. In his own pre-plea proffer, Steven indicated
that he had been involved with his father's drug traf-
ficking for approximately three years. His involvement
was not constant but instead focused on periods when
his father was visiting family members in Mexico. In
his plea agreement, Steven admitted that distribution of
between three and 10 kilograms of heroin pursuant to
the conspiracy was foreseeable to him. R. 36 at 4. That
was the quantity for which Steven ultimately was held
responsible at sentencing.

In anticipation of Araujo's sentencing, the govern-
ment prepared its version of the offense and submitted
it to the probation officer. In that account, the govern-
ment reiterated its position that the conspiracy involved
at least 30 kilograms of heroin and that Araujo should
be held responsible for that quantity:

> Defendant has acknowledged his heroin trafficking
> spanned nine years. He distributed large amounts
> of heroin at a time, and had no other appreciable

> sources of income, all while having homes and families in both the United States and Mexico. Defendant's son, who was only involved in the heroin trafficking for a few years and who was not involved in all of his father's dealings, acknowledged a drug quantity of up to 10 kilograms. Thus, the evidence establishes that the defendant was involved in the trafficking of over 30 kilograms of heroin.

R. 95, Government's Version of the Offense at 3. Interestingly, although the government relied upon other parts of the plea agreement's factual basis, it did not cite or rely upon the averment that the distribution of 30 or more kilograms of heroin was foreseeable to Araujo.

In her presentence report ("PSR"), the probation officer determined that the heroin quantity which Araujo should be held accountable was 30 or more kilograms, which resulted in a base offense level of 38. R. 95 at 5. Although the report acknowledged Araujo's contention that the conspiracy involved less than 30 kilograms, the probation officer nonetheless deemed the higher quantity of at least 30 kilograms appropriate, reasoning that "because the defendant agreed to this amount in his plea agreement and did not provide any information to refute it, it is the undersigned's position that an offense level of 38 is applicable." R. 95 at 5.

Araujo objected to the proposed drug quantity, arguing that the available "objective" evidence did not support a finding that he was responsible for 30 or more kilograms. R. 79. The plea agreement's factual basis could not be relied on for a finding of 30-plus kilograms,

he argued, given that the agreement also reserved his right to argue for a lesser quantity. R. 79 at 2. Walking through the various witness statements that had been produced to him in discovery, Araujo argued that none of the statements was sufficient to establish with sufficient reliability and precision that his trafficking was sufficiently extensive to have involved 30 or more kilograms of heroin. Pointing to his own post-arrest statement, Araujo noted that he had started out as a purveyor of cannabis, not heroin. R. 79 at 11. Although he had also admitted trafficking in heroin for nine years, "he did not say that this activity was constant for the entire nine years." R. 79 at 16. Moreover, in Araujo's view, the collective evidence did not demonstrate that any and all of the heroin transactions in which he took part from 1998 to 2007 were part of a single course of conduct, such that they should all be included in the drug-quantity calculation. R. 79 at 17. A finding of 30-plus kilograms "must necessarily include quantities that have absolutely no temporal proximity to those charged herein and would not have been part of the same course of conduct as that charged in the conspiracy." R. 79 at 17. In sum, "[b]ased upon the discovery that has been made available by the government, including Norberto's statement and those of his coconspirators, the heroin involved was less than 30 kilograms." R. 79 at 16. The proper amount for which to hold him accountable was thus more than 10 but less than 30 kilograms. R. 79 at 16.

In response to Araujo's objection, and to make the case that he was responsible for the distribution of 30 or more kilograms of heroin, the government cited two

categories of evidence. It cited the proffer statement, in which Araujo had conceded distributing 30 or more kilograms over the nine-year course of his heroin trafficking. R. 83 at 4. Consideration of the proffer was appropriate, the government argued, because in contending that the conspiracy and relevant conduct involved a lesser quantity of heroin, Araujo had taken a position inconsistent with the substance of his proffer and thereby forfeited the protections of the proffer letter. The government also pointed to other evidence which it believed independently supported the notion that Araujo was responsible for that amount, including his post-arrest admission that he had supplied the cooperating witness, Individual B, with heroin for nine years; the statement of another witness who said that Araujo and his son had supplied him with more than five kilograms of heroin "over the years"; and Steven's admission that, despite his relatively limited involvement in the conspiracy, he himself was responsible for up to 10 kilograms of heroin. R. 83 at 2-4.

After reviewing the parties' submissions and hearing argument on the drug quantity at sentencing, the district court found Araujo responsible for 30 kilograms and set his base offense level at 38. The court found, in the first instance, that by challenging the notion that distribution of 30 or more kilograms of heroin during the conspiracy was foreseeable to him, Araujo had taken a position inconsistent with his proffer and had thereby opened the door to the government's use of the proffer at sentencing. R. 105 at 19. Second, setting aside the contents of the proffer, the court found that the evi-

dentiary record as a whole supported a finding that Araujo was responsible for at least 30 kilograms. The court noted in particular that Araujo had admitted to a nine-year history of wholesale heroin distribution, that he sold 677 grams to the confidential informant in the weeks preceding his arrest, and that his son Steven, who was involved in the conspiracy for just three years and on an intermittent basis, had admitted responsibility for three to 10 kilograms of heroin. R. 105 at 19-20. Finally, the court pointed out that Araujo's plea agreement conceded distribution of no less than 30 kilograms of heroin. R. 105 at 20.

## II.

Under the Sentencing Guidelines, the base offense level for a defendant convicted of a drug trafficking offense typically turns on the total quantity of drugs involved in the offense. U.S.S.G. § 2D1.1(a)(5) & (c). This total includes transactions (and the amounts involved) that constitute relevant conduct under the Guidelines, in addition to any individual transactions (and amounts) charged in the offense of conviction. *See* §§ 1B1.3, 2D1.1 comment. (n.12). As to a jointly undertaken offense, which of course includes a conspiracy, relevant conduct includes not only those acts and omissions of the defendant, § 1B1.3(a)(1)A), but "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" that occurred during the conspiracy, § 1B1.3(a)(1)(B). For drug trafficking offenses, it also includes any such acts and omissions "that were

part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2); *see* § 3D1.2(d). The evidence on which the district court bases its determination of the drug quantity for which the defendant is responsible "must have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Barnes*, 602 F.3d 790, 794 (7th Cir. 2010) (quoting *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008)). The court's finding as to the relevant drug quantity is one of fact that we review for clear error. *Id.*

Araujo contends that the district court's drug-quantity finding is not adequately supported by the record. The plea agreement, in his view, is hopelessly ambiguous on that subject: although he conceded in the agreement's recitation of the factual basis for his plea that 30 or more kilograms were distributed in the course of the conspiracy and that this amount was foreseeable to him, he also reserved the right to argue that he was responsible for less than 30 kilograms. He points out that the government did not rely on that portion of the plea agreement's factual basis below, and that neither the government nor the court attempted to pin him down on the drug quantity during his plea colloquy. Araujo does not dispute that he conceded responsibility for a quantity of 30-plus kilograms of heroin in his proffer, but contends that the contents of the proffer could not be used against him at sentencing. Finally, he argues that the evidence of his trafficking presented to the court, although sufficient to establish his liability for more than 10 but less than 30 kilograms, was insufficient

to support the court's finding that he was responsible for 30 or more kilograms.

We need not resolve the asserted conflict between the plea agreement's unequivocal statement that the distribution of 30 or more kilograms of heroin in the course of the conspiracy was foreseeable to Araujo and the reservation of his right to argue in favor of a lower drug quantity. The government suggests that Araujo might have been reserving a legal argument with respect to the drug quantity without attempting to contradict or retract the factual concession as to the 30-plus kilograms that the agreement said were foreseeable to him. In any case, that is not the type of argument that Araujo, through his counsel, went on to make. He instead argued that the evidence did not support a finding that he and his co-conspirators distributed 30 or more kilograms over the life of the conspiracy and that this amount was foreseeable to him. That position is difficult, if not impossible, to reconcile with the plea agreement's factual basis; and yet the government did not contend below that this type of argument was foreclosed to Araujo by the plea agreement, and the government in fact pointedly refrained from citing the factual basis in response to Araujo's objection to the drug quantity proposed in the PSR. It seems likely to us that one or both parties forgot about or ignored the factual basis when they agreed to let Araujo reserve the relevant drug quantity for further argument. In any event, the government has not relied on the factual basis in defending the drug-quantity calculation.

The government does defend the court's reliance on Araujo's proffer, and we agree that the proffer became fair game once Araujo disclaimed responsibility for 30 or more kilograms of heroin. The proffer letter that Araujo and his counsel signed included the standard limitation on the use of any information that Araujo conveyed in the proffer:

> Anything related to the government by you or your client during the proffer cannot and will not be used against your client, NORBERTO ARAUJO in . . . aggravation of your client's sentence, in accordance with Sentencing Guideline 1B1.8. . . . [I]f your client should subsequently testify contrary to the substance of the proffer, or otherwise present a position inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer at sentencing for any purpose . . . .

R. 83-1 at 1. The Guideline referenced in this provision in turn states:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a). Taken together, the two provisions precluded the government from relying on Araujo's

proffer to establish the drug quantity for sentencing purposes unless and until Araujo took a position contrary to the proffer.

Araujo appears to read the plea agreement's reservation of rights with respect to the drug quantity to give him full license to oppose a heroin quantity of 30-plus kilograms without fear that the government would turn around and use his own proffer statement against him when he exercised that right; otherwise, he reasons, the right he so carefully preserved in the plea agreement would be of little practical value. On Araujo's reading of the plea agreement, even if he had taken the stand at sentencing and testified that he and his coconspirators distributed less than 30 kilograms of heroin, his contrary statement at the proffer would have remained off limits to the government.

This is an implausible reading of the plea agreement. That agreement said nothing about Araujo's proffer or its terms. The reservation of rights in the plea agreement permitted Araujo to make at least some types of arguments in favor of a lower drug quantity. We have abstained from deciding whether the reservation freed him from his otherwise binding factual admission in the same agreement that the conspiracy foreseeably involved the distribution of more than 30 kilograms. But whatever type of argument the reservation preserved for Araujo, it did not declare any type of evidence off limits to the government in meeting that argument. The evidentiary use of Araujo's proffer statement was instead governed by the terms of the proffer, which the plea agreement left

undisturbed. By the terms of the proffer letter, if and when Araujo took a position inconsistent with his proffer, the government was free to make use of his statement at sentencing.

A fair reading of Araujo's objection to the drug quantity is that it affirmatively disclaimed culpability for 30 or more kilograms of heroin. We may assume that the proffer terms left Araujo free to challenge the sufficiency of the evidence, independent of his proffer statement, that the government cited in the first instance to support a finding that he was responsible for more than 30 or more kilograms. It was the government's burden to establish the relevant drug quantity by a preponderance of the evidence. *E.g., United States v. Turner*, 604 F.3d 381, 385 (7th Cir. 2010). A contention that the government had not carried that burden, because the transaction amounts reported by its witnesses did not total up to 30 or more kilograms, would not by itself be inconsistent with Araujo's proffer statement. *See United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998). "Statements are inconsistent only if the truth of one implies the falsity of the other." *Id.* at 1025-26. Saying that the government has not proven a particular drug quantity does not imply that the defendant was lying when he conceded that quantity in plea negotiations. *See id.* at 1025. But Araujo's written objection to the drug quantity went beyond this type of argument. Araujo generally asserted that "the appropriate amount of heroin for which he should be held responsible and accountable is more than 10 but less than 30 kilograms," R. 79 at 16, and in support of that position he argued among

other things that he had started out as a distributor of marijuana rather than heroin, R. 79 at 11; that using the three- to 10-kilogram amount his son Steven admitted was distributed over the three-plus years of his involvement in the trafficking enterprise, Araujo himself should be held to account for just under three times that amount, i.e., less than 30 kilograms, R. 79 at 6; and that "it appears from the discovery that the greater than 30 kilogram quantity of heroin [for] which the government seeks to hold [him] accountable must necessarily include quantities that have absolutely no temporal proximity to those charged herein and would not have been part of the same course of conduct as that charged in the conspiracy," R. 79 at 17. Arguments in this vein could reasonably be understood as a denial that the conspiracy to which Araujo had pleaded guilty, and any related conduct, involved a total of 30-plus kilograms and, as such, a position that was inconsistent with Araujo's proffer statement. On that view of Araujo's objection, the terms of the proffer permitted the government to cite that statement as a means of rebutting Araujo's position.

This is not a case, like *United States v. Farmer*, 543 F.3d 363 (7th Cir. 2008), in which the prosecution cited the defendant's proffer in support of the version of the offense it submitted to the probation officer, before a presentence report had been prepared and thus before the defendant pursued an objection that was inconsistent with the proffer. *Id.* at 373-74. When the government submitted its version of Araujo's offense to the probation officer, it said nothing of the proffer and

instead relied on evidence wholly independent of Araujo's admission in the proffer (and his similar admission in the plea agreement) for the proposition that he was responsible for 30 or more kilograms of heroin. For her part, the probation officer relied on the plea agreement's factual basis in arriving at the quantity of 30 or more kilograms. Araujo, in objecting to that quantity, anticipated that the government might rely on his proffer and contended that it would be inappropriate for the government to do so. But it was only *after* Araujo contested the propriety of the 30-plus kilogram drug amount that the government actually cited and relied on his proffer statement. This was appropriate and consistent with the terms of the proffer.

Araujo's proffer statement is probative evidence that by itself supports the district court's drug-quantity calculation. As an intermediary who both acquired wholesale amounts of heroin and then supplied it to others for resale, Araujo was in as good a position as anyone to know how much heroin was distributed over the life of the conspiracy and his related course of drug dealing. By the time he gave his proffer, Araujo had been indicted and consulted with counsel, so he no doubt appreciated the significance of the drug quantity. By entering into the proffer agreement, promising to be truthful, and agreeing to let the government use his statement against him should he later contradict himself, he imbued his statement with greater credibility. *Krilich*, 159 F.3d at 1024-25.

We add that the amount Araujo acknowledged in his proffer is consistent with and reinforced by the other

evidence presented in the case. As conceded by Araujo in both the plea agreement and at his change of plea hearing, he had distributed wholesale quantities of heroin for nine years. (Although the conspiracy charged in the indictment did not commence until 2004, when Araujo's son became involved in the heroin trafficking, the plea agreement makes clear that Araujo had been trafficking in wholesale quantities of heroin since 1998 in the same area of metropolitan Chicago, together with some of the same co-conspirators, including Individuals B and C, as he did during the period of the charged conspiracy. *See* R. 38 at 2-3. It is reasonable to conclude that Araujo's trafficking prior to 2004 was part of the same course of conduct as his trafficking during the alleged conspiracy.) Araujo had no verifiable legitimate employment during that time, but supported family members in both the United States and Mexico. Steven Araujo, who had aided his father's trafficking operation on a part-time basis and over a period of roughly three years, conceded that the distribution of as much as 10 kilograms of heroin was foreseeable to him. In his post-arrest statement, Araujo Senior acknowledged that he had multiple sources of heroin: he had obtained more than a kilogram of heroin roughly two months prior to his arrest from one source, and had a pending order for another two kilograms; from a second source, he had purchased 300 to 400 grams monthly over the course of a year, for a total of 3.6 to 4.8 kilograms acquired in that year. If Araujo was purchasing four kilograms of heroin per year, which is a reasonable estimate given the amounts he acquired from

these two sources, then he obtained at least 36 kilograms of heroin for resale over the nine years of his trafficking operation. What we know about the sales side of his operation is consistent with that estimate. Araujo sold two-thirds of a kilogram of heroin to the government's informant in May and June 2007; multiplying that amount by six indicates that he was selling four kilograms of heroin per year.[1] Araujo had other customers, of course: he acknowledged in his post-arrest statement that he had been selling heroin to "Ray" in amounts between 75 and 175 grams of heroin every ten days in undiluted form, for example. As those

---

[1] Araujo points out that, contrary to his own post-arrest statement that he had been supplying heroin to Individual B for nine years, Individual B told the authorities that he only transacted business with Araujo and his son from 2003 until 2005, at which time he began to obtain heroin from Individual C, whom the Araujos (among others) also supplied. Individual B also described a smaller range of transaction amounts than Araujo himself did. But these conflicts do not undermine the district court's drug-quantity calculation. Araujo conceded in the plea agreement that he had dealt in wholesale quantities of heroin for nine years. The transaction amounts and frequencies that both Individual B and Araujo recounted were consistent with wholesale distribution on a significant scale. Moreover, the amounts of heroin involved in the charged transactions leading up to Araujo's arrest were themselves large, consistent with the totals that Araujo said he had historically sold to Individual B, and indicative of an overall level of trafficking consistent with the 30-kilogram total attributed to Araujo.

amounts are consistent with the amounts that Araujo sold to Individual B in the weeks preceding his arrest, they dispel doubt that the sales to the government's agent were unusual either in frequency or amount. The sales to "Ray" alone would total between 2.7 kilograms and 6.3 kilograms per year.

Obviously, determining the total drug quantity for which Araujo is responsible requires extrapolation, as the record does not include any sort of book-keeping data on his purchases and sales nor comparable year-by-year witness accounts of his transactions. But such extrapolation is permissible so long as it is based on reliable data regarding the size and frequency of the defendant's transactions. *E.g.*, *United States v. Easter*, 553 F.3d 519, 524 (7th Cir. 2009) (per curiam), *petition for cert. filed* (U.S. Mar. 26, 2009) (No. 08-9560), and *cert. denied*, 130 S. Ct. 1281 (2010) (No. 08-10584). Araujo himself admitted to a nine-year history of wholesale trafficking, and there is nothing in the record suggesting that the substantial amounts of heroin he is known to have acquired and sold to the government's informant and to his second identified customer were dispropor-tionate to the level of his trafficking in other years. The available evidence confirms the total drug quantity that Araujo conceded in his proffer.

## III.

The district court did not clearly err in finding Araujo responsible for the distribution of 30 or more kilograms of heroin and setting his base offense level at 38. The

sentence that the court imposed was within the advisory range corresponding to that offense level and therefore is presumptively reasonable; and beyond challenging the drug quantity, Araujo has posed no other objection to his sentence on appeal. We therefore AFFIRM his sentence.