**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 16, 2011
Decided February 17, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 10-1888 & 10-1902

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 09-CR-60-C |
| ALFREDO HERRERA and JUAN RODRIGUEZ-MORENO, *Defendants-Appellants.* | Barbara B. Crabb, *Judge*. |

**O R D E R**

Through a series of controlled buys, surveillance, and witness interviews, authorities established that Alfredo Herrera, at his older brother's direction, was delivering cocaine to several mid-level distributors, and that Juan Rodriguez-Moreno frequently obtained cocaine from Herrera's brother for resale. Herrera and Rodriguez-Moreno were charged with conspiring to distribute, and distributing cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. Rodriguez-Moreno pleaded guilty to the conspiracy count and was sentenced to 10 years' imprisonment and 5 years' supervised release. A jury found Herrera guilty of conspiracy and one of the two substantive counts, and the district court sentenced him to a total of 5 years' imprisonment and 4 years' supervised release. We consolidated their appeals, and the appointed lawyer for each defendant has moved to withdraw on the ground that his

client's appeal is frivolous. *See Anders v. California*, 386 U.S. 738, 744 (1967). Neither defendant has responded to our invitation to comment on his lawyer's submission. *See* CIR. R. 51(b). We review only the potential issues identified in the lawyers' facially adequate briefs. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Counsel for Rodriguez-Moreno first evaluates whether the defendant might challenge the voluntariness of his plea or the district court's compliance with Federal Rule of Criminal Procedure 11(b). The lawyer also considers whether Rodriguez-Moreno might assert that his 10-year prison term is unreasonably long. Counsel does not suggest, however, that Rodriguez-Moreno wants his guilty plea set aside, and so the lawyer should not have explored this potential issue. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). In any event, Rodriguez-Moreno did not move to withdraw his plea in the district court, and thus our review would be limited to plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Vonn*, 535 U.S. 55, 62-63 (2002); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010). And in this case the district judge substantially complied with Rule 11(b), *see United States v. Blalock*, 321 F.3d 686, 688 (7th Cir. 2003); *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002), and thus any appellate claim about the guilty plea would be frivolous. Moreover, during the plea colloquy Rodriguez-Moreno admitted that the conspiracy involved at least 5 kilograms of cocaine, which triggered a statutory minimum of 10 years' imprisonment. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii) (2006). That is the sentence Rodriguez-Moreno received, so as counsel recognizes, a claim that the prison term is unreasonably long also would be frivolous.

With respect to Herrera, his lawyer could not tease a nonfrivolous issue from the short, two-day trial. Herrera did not introduce any evidence of his own and made only routine objections to the government's case, which took less than six hours. Several conspirators testified that, after they had ordered cocaine from Herrera's brother, Herrera delivered multiple ounces of the drug in clear, plastic bags and accepted money in exchange. These deliveries spanned more than 18 months. Herrera's brother, the coconspirators reported, repeatedly sold large amounts of cocaine, sometimes on credit, to mid-level suppliers. Credit sales when coupled with large quantities of drugs, repeat purchases, or some other enduring arrangement support an inference that the buyers have become co-venturers. *See United States v. Rea*, 621 F.3d 595, 608 (7th Cir. 2010); *United States v. Lee*, 618 F.3d 667, 674-75 (7th Cir. 2010); *United States v. Johnson*, 592 F.3d 749, 755 n.5 (7th Cir. 2010). Herrera's involvement was further corroborated by testimony from investigators and an informant who set up two controlled buys. The informant ordered cocaine from Herrera's brother and was told where to go for delivery. The informant and one surveillance agent testified that Herrera delivered the cocaine both times. Two other agents said, however, that they were unable to identify Herrera the first time, which is the only

count on which the jury acquitted. We agree with counsel that any claims about Herrera's convictions would be frivolous.

Moving beyond the convictions, counsel evaluates whether Herrera might challenge the amount of cocaine attributed to him by the district court, or the reasonableness of the overall prison term he received. We agree with counsel that either potential claim would be frivolous, though apparently counsel does not appreciate just how lucky Herrera was. At sentencing, Herrera denied all involvement in the conspiracy and insisted that, although he was living with his brother, he did not know that his brother was dealing cocaine. That denial was preposterous in light of the government's evidence at trial. And the district court, although noting that Herrera had personally delivered only about 135 grams and was not actively involved in the conspiracy for its entire duration, also pointed out that he was delivering cocaine to a number of different people and must have known that his brother had quick access to the cocaine needed to fill their orders. Thus the court found that Herrera knew "that his brother was dealing cocaine on a large scale and certainly larger than 499 grams."

But how much larger than 499 grams? The district court reasoned that, although 13 *kilograms* had been distributed during the course of the conspiracy, Herrera could not have predicted that the amount was more than 2 kilograms. A cocaine quantity of 500 or more grams is enough to mandate a prison sentence of 5 years, 21 U.S.C. § 841(b)(1)(B)(ii) (2006), which is the sentence Herrera received. On the other hand, 5 kilograms would have mandated a 10-year minimum term, equivalent to the sentence imposed on Rodriguez-Moreno. *See id.* § 841(b)(1)(A)(ii) (2006). So why not 5 or more kilograms for Herrera?

In sentencing Herrera the district court might have felt constrained by the jury's special verdict, which set the amount of cocaine involved in the conspiracy at 500 or more grams but less than 5 kilograms. The jury's finding, however, was based on a standard of proof beyond a reasonable doubt and did not restrict the court from calculating a higher weight when applying the statutory *minimum*. That is because drug quantity, for purposes of determining a minimum penalty under § 841(b), is a question for the sentencing court using a preponderance standard, *Harris v. United States,* 536 U.S. 545, 557 (2002); *United States v. Araujo,* 622 F.3d 854, 861 (7th Cir. 2010), and the court is not bound by a jury's lower assessment, *United States v. Young,* 609 F.3d 348, 356 (4th Cir. 2010); *United States v. Webb,* 545 F.3d 673, 677 (8th Cir. 2008); *United States v. Florez,* 447 F.3d 145, 156 (2d Cir. 2006) *United States v. Rivera,* 411 F.3d 864, 866 (7th Cir. 2005). As Herrera arguably faced even a longer minimum sentence than the term he received, any appellate challenge would be frivolous.

Finally, we note that in both of these appeals the lawyers comment that their clients could possibly claim ineffective assistance. But neither lawyer identifies a shortcoming on which to premise a claim, and since each lawyer also represented his client in the district court, it would have been inappropriate to impugn his own performance. *United States v. Rezin*, 322 F.3d 443, 445 (7th Cir. 2003). Thus, the general rule that claims of ineffective assistance are premature on direct appeal, *Massaro v. United States*, 538 U.S. 500, 504-05 (2003), is all the more sensible in these cases.

The motions to withdraw are GRANTED, and these appeals are DISMISSED.