PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DARNELL ANTHONY YOUNG, a/k/a
DJ Nelly Nell, a/k/a Nelly,

*Defendant-Appellant.*

No. 08-4117

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

DARNELL ANTHONY YOUNG, a/k/a
DJ Nelly Nell, a/k/a Nelly,

*Defendant-Appellee.*

No. 08-4118

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:06-cr-00491-WDQ-1)

Argued: May 11, 2010

Decided: June 28, 2010

Before TRAXLER, Chief Judge, and NIEMEYER and
AGEE, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

---

## COUNSEL

**ARGUED:** William A. Mitchell, Jr., BRENNAN, SULLI-VAN & MCKENNA, LLP, Greenbelt, Maryland, for Appellant/Cross-Appellee. Tonya Kelly Kowitz, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee/Cross-Appellant. **ON BRIEF:** Alexander Zeno, Washington, D.C., for Appellant/Cross-Appellee. Rod J. Rosenstein, United States Attorney, Jason M. Weinstein, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee/Cross-Appellant.

---

## OPINION

TRAXLER, Chief Judge:

Darnell Young was convicted of drug-related charges and received a within-Guidelines sentence of 136 months' imprisonment. Young appeals his convictions and sentence, and the government cross-appeals the sentence imposed by the district court. We reject Young's challenges, but we agree with the government that the district court erred when it concluded that the drug-quantity determinations made by the jury prevented the court from finding a different quantity at sentencing. Accordingly, we affirm Young's convictions, vacate his sentence, and remand for resentencing.

I.

After a lengthy investigation, the government in October 2006 indicted Young on various drug and weapons charges,

alleging that Young was part of a conspiracy to distribute cocaine that operated from 1999 through 2004. On November 1, 2006, the government obtained a warrant authorizing Young's arrest. After the warrant was issued, the government ultimately determined that Young lived in a townhouse in Owings Mills, Maryland.

On November 6, 2006, federal law enforcement agents established surveillance of Young's townhouse to determine if he was there and could be arrested. The agents watched a silver SUV park near the townhouse and saw a man later identified as Errol Wynter approach the house. Wynter knocked on the door and the door was quickly opened. While Wynter was inside the townhouse, the agents checked the license plate number of the SUV and learned that it was titled to a car dealership associated with someone known to law enforcement as "Clive," who was believed to be Young's cocaine supplier. After about five minutes, Wynter emerged from the townhouse carrying a red plastic bag. Agents stopped Wynter shortly after he left the townhouse and found in the vehicle five cell phones and the red plastic bag, which contained approximately $40,000 packaged in bundles. The agents seized the money and allowed Wynter to leave.

Shortly after Wynter was stopped, the agents obtained a key to Young's townhouse from the complex's leasing office and then proceeded to Young's townhouse. The agents repeatedly knocked loudly on the door and announced themselves as police. When Young did not answer the door after approximately twenty seconds, an agent used the key and opened the door. When the agents entered, they saw Young on the stairs, which were adjacent to the front door. Young did not comply when the agents ordered him to lie on the floor, so the agents forced him to the ground, removed a loaded gun from the waistband of his pants, and handcuffed him.[1]

---

[1]Young testified at the suppression hearing that he heard banging at his door but did not hear the police announce themselves. When he heard the banging at the door, Young took his gun from a box in his bedroom, loaded it, and put it in his waistband before going downstairs.

The kitchen was just a few feet away from where the officers entered the house, and an open plastic bag was on the kitchen island in plain view. The agents could see into the bag and saw that it contained two brick-shaped items composed of a white powder that appeared to be cocaine. The agents then applied for a search warrant, and they waited at the house for the warrant. After receiving the search warrant, the agents searched the house and found two kilograms of cocaine in the plastic bag in the kitchen, approximately three kilograms of cocaine in the washing machine, $17,000 in cash, and seven cell phones and chargers. One of those cell phones had been used only from October 12, 2006, through November 4, 2006 —two days before Young was arrested. That phone had been used to make and receive calls from only one number, a number that belonged to one of the cell phones seized from Wynter.

The day after Young was arrested, the government obtained a superseding indictment, changing the end-date of the conspiracy to on or about November 6, 2006, the date of Young's arrest, and adding Wynter as a co-defendant, who by then had been identified as cocaine supplier "Clive." Although the indictment alleged a seven-year conspiracy, the government at trial focused only on the relationship between Young and Wynter and only presented evidence recovered from Young's house on November 6, and from Wynter when he was stopped on November 6 and when he was arrested two days later. Wynter eventually pleaded guilty, and Young proceeded to trial.

At trial, Young sought to suppress the evidence seized from his house, arguing that the agents did not properly knock and announce their presence before entering his townhouse to execute the arrest warrant. The district court denied the motion, concluding that the officers complied with the knock-and-announce requirements before entering the house and saw in plain view the cocaine on the kitchen counter when they entered.

The jury convicted Young of conspiracy to distribute cocaine, *see* 21 U.S.C.A. § 846 (West 1999), and distribution of and possession with intent to distribute cocaine, *see* 21 U.S.C.A. § 841(a) (West 1999), but acquitted Young of possession of a firearm in furtherance of a drug-trafficking crime, *see* 18 U.S.C.A. § 924(c) (West 2000 & Supp. 2010). By way of a special verdict form, the jury concluded that, as to both the conspiracy and substantive drug counts, at least 500 grams but less than five kilograms of cocaine were involved.

The presentence report prepared for Young's sentencing concluded that Young was involved in the distribution of at least 50 but less than 150 kilograms of cocaine. After applying two offense-level enhancements, the PSR determined that Young's total offense level should be 40, which, when combined with Young's category I criminal history, yielded an advisory sentencing range of 292-365 months.

At the sentencing hearing, the government sought to present evidence to establish that Young was involved in the distribution of between 90 and 100 kilograms of cocaine. The district court, however, announced its intention to sentence Young based on the drug quantity found by the jury, not the quantity recommended in the PSR. The court stated that because the jury had concluded beyond a reasonable doubt that the case involved at least 500 grams but less than five kilograms of cocaine, the court was not free to increase Young's punishment within the statutory maximum by concluding, under a lower standard of proof, that a greater quantity of drugs was involved. To preserve an adequate record for appeal, the court permitted the government to proffer its drug-quantity evidence, and the court made a finding that the proffered evidence would have established that Young's offenses involved between 90 and 100 kilograms of cocaine.

Based on the jury's drug-quantity determination, the district court set Young's base offense level at 30. The court added a two-level enhancement for possession of a firearm, but

rejected the government's request for a two-level obstruction of justice enhancement, for a total base offense level of 32. With Young's category I criminal history, the advisory Guidelines sentencing range was 121-150 months, and the district court sentenced Young to 136 months. If the district court had accepted the drug quantity established by the government's proffer, Young's offense level would have been 38 and his advisory sentencing range would have been 235-293 months.

## II.

We first consider Young's various challenges to his convictions and sentence.

## A.

Young contends that the district court erred in denying his motion to suppress the evidence seized from his townhouse. The warrant for Young's arrest gave police the authority to enter his house to effect the arrest, provided that they had reason to believe he was present in the house. *See Payton v. New York*, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). Young does not contend that the arrest warrant was invalid, or that the police lacked reason to believe he was inside the house. Instead, Young argues that the evidence should be suppressed because the police when executing the arrest warrant failed to properly knock and announce their presence before entering his house.

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV. One element of the reasonableness inquiry is the requirement that police knock, announce their presence, and wait a reasonable time before entering a house to execute a search or arrest war-

rant. *See Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). This constitutional requirement is reflected in 18 U.S.C.A. § 3109, which provides that an officer "may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance." 18 U.S.C.A. § 3109 (West 2000); *see United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir. 1994).[2] Although an officer may not forcibly enter unless he has been refused admittance, such a refusal need not be expressly made —"the refusal may be constructive or reasonably inferred from the circumstances." *United States v. Gallegos*, 314 F.3d 456, 459 (10th Cir. 2002) (internal quotation marks omitted).

The officers in this case did knock and announce their presence before entering the townhouse. Young, however, contends that the twenty seconds the officers waited before entering the townhouse was not long enough for them to infer that they had been refused admittance. According to Young, the agents should have waited a minimum of two minutes before entering his house. We disagree.

"[A] constructive refusal occurs, giving police the right to enter by force, where the occupants do not admit the officers within a reasonable period of time." *Id.* (internal quotation marks omitted). Because the ultimate question is the reasonableness of the officers' conduct, there can be no bright-line rule establishing the length of time that police must wait to enter after announcing their presence. The reasonableness of the delay varies with each case and depends on the totality of the circumstances. *See United States v. Lipford*, 203 F.3d 259, 270 (4th Cir. 2000); *United States v. Ward*, 171 F.3d 188, 193-94 (4th Cir. 1999).

---

[2]While section 3109 refers only to search warrants, its standards govern the execution of arrest warrants as well. *See Miller v. United States*, 357 U.S. 301, 308-09 (1958); *United States v. Alejandro*, 368 F.3d 130, 133 (2d Cir. 2004).

Implicit in the district court's conclusion that the agents complied with the knock-and-announce requirements is the factual determination that the twenty-second wait was reasonable. We cannot conclude that the district court clearly erred in that regard. *See United States v. Wardrick*, 350 F.3d 446, 451 (4th Cir. 2003) ("In considering a district court's denial of a motion to suppress evidence, we review the court's factual findings for clear error and its legal determinations de novo."); *Ward*, 171 F.3d at 194 (reviewing for clear error district court's finding that agents waited a reasonable time after knocking and announcing before entering); *United States v. Banks*, 10 F.3d 1044, 1057 (4th Cir. 1993) (reviewing explicit and implicit factual findings for clear error). Young himself testified at the suppression hearing that the townhouse was relatively small, and the agents had just observed Young promptly answer the door when Wynter knocked. Under these circumstances, we believe the agents could reasonably infer after twenty seconds that they had been effectively refused admittance to the townhouse. *See, e.g.*, *United States v. Morris*, 436 F.3d 1045, 1049 (8th Cir. 2006) ("[E]ntry into the residence of a drug trafficking suspect, ten seconds after knocking and announcing at a reasonable evening hour, was constitutionally reasonable."); *United States v. Pennington*, 328 F.3d 215, 221 (6th Cir. 2003) (finding no knock-and-announce violation where officers forcibly entered defendant's residence eight to ten seconds after announcing their presence); *United States v. Spriggs*, 996 F.2d 320, 323 (D.C. Cir. 1993) (finding fifteen-second wait sufficient to satisfy the requirements of the knock-and-announce rule). The district court therefore did not err in concluding that the agents complied with their knock-and-announce obligations.[3]

---

[3]In *Hudson v. Michigan*, 547 U.S. 586, 594 (2006), the Supreme Court held that suppression is not an appropriate remedy for knock-and-announce violations occurring in the execution of search warrants. The government contends that *Hudson* applies to knock-and-announce violations arising from the execution of arrest warrants, *see United States v. Pelletier*, 469 F.3d 194, 201 (1st Cir. 2006) (concluding that *Hudson* applies in the context of an arrest warrant), while Young argues that there

Young also contends that the evidence should have been suppressed because the police used the arrest warrant as a pretext to search his house. According to Young, the police had ample opportunity to arrest him outside his house in the days before they executed the arrest warrant, and on the day of the arrest they could have simply waited for him to come outside. Young thus argues that the police used the arrest warrant as a pretext to get inside the house where they could search for drugs, and he contends that the evidence found in his house should therefore be suppressed.

This argument is without merit. Whether or not the agents executing the warrant hoped there might be evidence in plain view once they entered the house, their subjective motivations are irrelevant to our Fourth Amendment analysis. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action. The officer's subjective motivation is irrelevant." (citation, internal quotation marks and alteration omitted)). The arrest warrant gave the agents the right to enter Young's house, and the agents properly executed that warrant and saw drugs in plain view when they entered. Those drugs provided probable cause for the agents to obtain a search warrant, and execution of that warrant led to the discovery of other evidence. Because Young does not challenge the validity of the arrest warrant or the subsequently issued search warrant, there is no basis to suppress the evidence found in his house.

B.

Young also challenges the sufficiency of the evidence supporting his conspiracy conviction. According to Young, the

---

are different considerations present in arrest-warrant cases that counsel against an extension of *Hudson*. Given our conclusion that the agents complied with the knock-and-announce requirements, we need not consider whether *Hudson* applies in cases involving the execution of arrest warrants.

government's evidence at most showed the existence of a buyer-seller relationship between Young and Wynter, which Young contends is insufficient to show the existence of a conspiracy. *See, e.g.*, *United States v. Mills*, 995 F.2d 480, 485 (4th Cir. 1993) (noting that evidence showing a buyer-seller relationship is not alone enough to establish a drug-distribution conspiracy).

"A defendant challenging the sufficiency of the evidence faces a heavy burden," *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007), because the jury's verdict "*must be upheld* on appeal if there is substantial evidence in the record to support it," *id.* at 244 (emphasis added). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Our review is thus limited to determining whether, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the [g]overnment, . . . the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *Id.* at 863.

The evidence presented at trial established that Young was in possession of almost five kilograms of cocaine, a quantity that clearly was large enough to permit the jury to conclude that the drugs were intended for distribution. *See United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992) ("Intent to distribute may be inferred from the quantity of drugs possessed."). Young and Wynter were each in possession of a large amount of cash, which could be rationally viewed by the jury as evidence of their involvement in a drug-distribution scheme. *See United States v. Fisher*, 912 F.2d 728, 731 (4th Cir. 1990) ("The large amount of cash found in Fisher's possession . . . is additional circumstantial evidence of his involvement in narcotics distribution."). The evidence that Young was in possession of multiple cell phones, including one that was used only to call and receive calls from one of

Wynter's many cell phones, could likewise be viewed by the jury as evidence of a drug-distribution conspiracy involving Young and Wynter, particularly since a government expert testified at trial that drug dealers frequently use different cell phones to make and receive calls from their supplier, their customers, and their families. The government's evidence thus established much more than a mere buyer-seller relationship between Young and Wynter, and the evidence was more than sufficient to support Young's conviction for conspiring to distribute cocaine. *See United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008) ("[E]vidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs."); *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir.) ("[E]vidence of [a buyer-seller] relationship, when combined with evidence of a substantial quantity of drugs . . . would support a reasonable inference that the parties were coconspirators." (internal quotation marks omitted)), *cert. denied*, 129 S. Ct. 137 (2008).

## C.

Finally, Young raises various challenges to his sentence. As to two of his claims (his claim that a district court does not have the authority to increase a sentence beyond the statutory minimum by making its own findings of fact and his claim that a district court should not be able to enhance a sentence based on acquitted conduct), Young acknowledges that the claims are foreclosed by circuit precedent. He makes no substantive arguments on those claims but merely seeks to preserve the issues for possible *en banc* review, and we need not address those claims.

The one argument that Young does substantively address, however, is also foreclosed by precedent. According to Young, requiring sentencing courts to consider the factors set out in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2010) creates a mandatory sentencing scheme that is functionally

identical to the mandatory Guidelines system that the Supreme Court in *Booker* concluded violated the Sixth Amendment. Young therefore argues that the post-*Booker* sentencing procedure likewise violates the Sixth Amendment. Consideration of the § 3553(a) factors is mandated by Supreme Court precedent, *see, e.g.*, *Gall v. United States*, 552 U.S. 38, 49-50 (2007), and we are not at liberty to disregard Supreme Court precedent. Young must therefore direct his argument to the Supreme Court, not this court.

## III.

We now turn to the government's cross-appeal challenging the sentence imposed by the district court. The government argues that the district court erred by concluding that the jury's drug-quantity finding prevented the court from determining that the drug quantity for sentencing purposes was higher than the amount found by the jury. The government contends that the jury's finding established the maximum sentence Young was eligible to receive under the statute but did not otherwise affect the district court's authority to find facts as necessary to fix the sentence within that statutory maximum. We agree.

Under section 841, the minimum and maximum sentences available for drug offenses increase as the quantity of drugs increases. *See* 21 U.S.C.A. § 841(b)(1)(A)(ii) (setting minimum sentence of 10 years and maximum sentence of life imprisonment for cases involving five kilograms or more of cocaine); *id.* § 841(b)(1)(B)(ii) (setting minimum sentence of five years and maximum sentence of 40 years for cases involving 500 grams or more of cocaine); *id.* § 841(b)(1)(C) (setting no minimum sentence and maximum sentence of 20 years for cases involving unspecified quantities of a schedule II controlled substance). The drug-quantity thresholds set forth in § 841 are elements of the "aggravated drug trafficking offense[s]." *United States v. Promise*, 255 F.3d 150, 156 (4th Cir. 2001) (en banc). Thus, unless the drug-quantity threshold

is alleged in the indictment and found by the jury, the conviction is not for an aggravated drug-trafficking offense and the defendant may not be sentenced to more than the 20 years authorized by § 841(b)(1)(C). *See id.* at 156-57 ("[I]n order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt." (footnote omitted)); *United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008) ("[I]f the government wishes to seek a sentence that exceeds the statutory sentencing range for an indeterminate amount of drugs, then it must charge the facts giving rise to the increased sentence in the indictment and must prove those facts to the jury beyond a reasonable doubt." (internal quotation marks and alteration omitted)), *cert. denied*, 129 S. Ct. 2021 (2009).

The indictment in this case alleged that Young's crimes involved more than five kilograms of cocaine. The jury, however, found Young guilty of lesser-included offenses involving less than five kilograms of cocaine but more than 500 grams. The jury's drug-quantity finding therefore established 40 years as the maximum sentence that could be imposed on Young. But beyond establishing the maximum sentence, the jury's drug-quantity determination placed no constraint on the district court's authority to find facts relevant to sentencing.

In order to select a sentence within a jury-verdict-authorized maximum sentence, the district court must make relevant factual findings based on the court's view of the preponderance of the evidence. When making those factual findings, the district court may consider acquitted conduct, so long as the court determines that the conduct was established by a preponderance of the evidence. This judicial fact-finding was a critical part of the sentencing process before *Booker*, and it remains a critical part of the process after *Booker*. *See United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008)

(explaining that post-*Booker*, "[s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict"), *cert. denied*, 129 S. Ct. 950 (2009); *United States v. Perry*, 560 F.3d 246, 258-59 (4th Cir.) ("It has long been established that sentencing courts may consider acquitted conduct in establishing drug amounts for the purpose of sentencing, so long as the amounts are established by a preponderance of the evidence. And, we reject Perry's assertion that this point is no longer valid in light of *United States v. Booker*, 543 U.S. 220 (2005)." (citations omitted)), *cert. denied*, 130 S. Ct. 177 (2009); *see also Rita v. United States*, 551 U.S. 338, 352 (2007) (noting that "many individual Guidelines apply higher sentences in the presence of special facts, . . . [and that] [i]n many cases, the sentencing judge, not the jury, will determine the existence of those facts").

By determining that the evidence presented at trial established that Young's crimes involved between 500 grams but less than five kilograms of cocaine, the jury in this case effectively acquitted Young of involvement with the distribution of more than five kilograms. The district court was free to consider, as it would with any other acquitted conduct, whether the government could establish a higher quantity under a preponderance of the evidence standard. *See Webb*, 545 F.3d at 677 ("[A] district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court's calculation is supported by sufficient evidence."); *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (rejecting defendant's claim that the district court erred by attributing 10-30 kilos of heroin to the defendant for sentencing purposes when the jury found the defendant was only involved with 3-10 kilos of heroin, noting that "judicial authority to find facts relevant to sentencing by a preponderance of the evidence sur-

vives *Booker*" (internal quotation marks and alteration omitted)).

To the extent that Young suggests the government was estopped from establishing a higher drug quantity at sentencing because it elected not to present that evidence at trial, the argument is without merit. The government at sentencing properly sought to establish as relevant conduct the total quantity of drugs attributable to Young. "Relevant conduct" under the Guidelines, of course, often includes a broader range of conduct than the conduct underlying the offense of conviction. *See, e.g.*, *United States v. Newsome*, 322 F.3d 328, 339 (4th Cir. 2003). This is particularly so in drug cases, where relevant conduct is defined to include "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

The government's decision to limit the evidence it presented at trial necessarily affected the jury's drug-quantity determination, but that trial decision did not tie the hands of the government, or the district court, at sentencing. There is no requirement that the government present its relevant conduct evidence at trial, nor is the district court at sentencing bound by the evidence presented at trial when determining drug quantity or other relevant conduct. *See United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir. 1993) ("Determining drug quantity is a task for the sentencing court, and in performing that task it is not bound by jury findings or evidence presented at trial, but may consider any reliable proof." (citation omitted)); *cf. United States v. Butner*, 277 F.3d 481, 487 (4th Cir. 2002) ("In determining the loss amount, a sentencing court may consider relevant conduct that has not been charged and proven at trial, if it is shown by a preponderance of the evidence at sentencing."). The government therefore was entitled to establish Young's relevant conduct through evidence that had not been presented at trial, and the district court was obligated to consider that evidence (so long as the evidence was

reliable) for purposes of calculating Young's advisory sentencing range. *See* U.S.S.G. § 1B1.3(a) (stating that a defendant's offense level "*shall be determined* on the basis of" the offense of conviction and relevant conduct (emphasis added)); *United States v. Hayes*, 322 F.3d 792, 802 (4th Cir. 2003) (noting that "a court has no discretion to disregard relevant conduct" when calculating offense level); *see also United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010) ("[A] sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.").

Because the jury's drug-quantity finding established the maximum sentence that could be imposed but did not otherwise constrain the district court's authority to make factual findings as necessary to select the appropriate sentence from within the range authorized by the jury's verdict, the district court erred by concluding that it was bound by the jury's drug-quantity finding. Young does not contend that any error in this regard is harmless, nor would the record permit such a conclusion. *See, e.g.*, *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) (recognizing that procedural sentencing errors are subject to review for harmlessness). As previously discussed, the district court permitted the government to proffer its evidence showing the higher drug quantity. The court stated that the proffered evidence would have established Young's involvement with between 90 and 100 kilograms of cocaine and that the court "would have accepted that testimony." J.A. 671. If the district court had recognized its authority to consider the drug quantity established by the government's proffer, Young's advisory sentencing range would have been 235-293 months—almost double the 121-150 month sentencing range used by the district court. The district court imposed a sentence within the lower range, without giving any indication that it would have imposed the same sentence even if it were not bound by the jury's drug-quantity determination or that a sentence within the higher Guidelines

range would have been too high. Under these circumstances, we cannot conclude that the district court's error in applying the Guidelines did not affect the court's selection of the sentence imposed, and we therefore cannot conclude that the error was harmless. *See United States v. Harris*, 597 F.3d 242, 261 (5th Cir. 2010) ("A procedural error made during sentencing is harmless if the error did not affect the district court's selection of the sentence imposed."). We must therefore vacate Young's sentence and remand for re-sentencing.

## IV.

To summarize, we find no error in the district court's determination that the agents when executing the arrest warrant complied with the knock-and-announce requirements of the Fourth Amendment, and we reject Young's claims that the evidence seized from his townhouse should have been suppressed. We conclude that the government presented sufficient evidence to sustain Young's conspiracy conviction, and we reject Young's various challenges to his sentence. On the government's cross-appeal, however, we conclude that the district court erred by viewing the jury's drug-quantity determination as precluding the court from finding a higher quantity for sentencing purposes. Because the district court's error was not harmless, we hereby vacate Young's sentence and remand for re-sentencing.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*