AGEE, Circuit Judge,
dissenting:
As an appellate court, we are to review the record in the light most favorable to the prevailing party below, which, in this case, is the Government. United States v. Branch, 537 F.3d 328, 337 (4th Cir.2008) (stating that when assessing a district court’s decision on a motion to suppress, the Court must construe the evidence in the light most favorable to the prevailing party); see also United States v. Humphries, 372 F.3d 653, 657 (4th Cir.2004) (stating that “[i]n our deference to fact-finding, we also give due weight to inferences drawn from those facts by resident judges and local law enforcement officers”) (internal quotation marks omitted). The majority opinion fails to follow this fundamental rule of appellate review. When the facts are viewed in their proper light under the accepted standard of judicial review, they satisfy the standard set forth in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that permits police entry into a dwelling without a search warrant in order to execute an arrest warrant. Accordingly, I cannot join the majority opinion.
I.
The Supreme Court’s decision in Payton articulates the relevant standard: “for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” Id. at 603, 100 S.Ct. 1371 (emphasis added). As the majority opinion *271 observes, courts have generally recognized two components of this analysis: first, that the dwelling entered is the residence of the subject of the arrest warrant; and, second, that the police possess “reason to believe the suspect is within” when they enter. See Maj. Op. at 262-63 (citing eases).[1]
I agree with the majority that the first prong of the Payton analysis is satisfied: the Lorton townhouse was Hill’s residence. Not only has Hill conceded this point, but the district court had ample basis on which to conclude that Hill did reside there. Hill does not challenge the district court’s determination on appeal, so that issue is not before us. See Rosenberger v. Rector & Visitors, 18 F.3d 269, 276 (4th Cir.1994), rev’d on other grounds, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (holding that appellant’s failure to raise an issue in the opening brief results in the issue being abandoned for failure to comply with the requirements of Federal Rule of Appellate Procedure 28(a)).
II.
Where the majority opinion and I part ways is with respect to the second prong of the Payton test: did the police have reason to believe that Hill was present at the Lorton townhouse at the time they entered? A full review of the factual record shows that they did.
Although the majority opinion recites the proper standard of review, it fails to apply that principle. When a motion to suppress has been denied, we are to review the evidence in the light most favorable to the Government. See Branch, 537 F.3d at 337. In my view, that is not what the majority opinion does in this case. The majority opinion not only omits any reference to several factors supporting the conclusion that the police had reason to believe Hill was inside the residence entered, but also mischaracterizes portions of the factual record, the effect of which is to present the evidence in the light most favorable to Hill and least favorable to the Government.
The police learned that Hill resided at the Lorton townhouse after Alvarez placed a 9-1-1 call on July 17, twelve days before the events at issue in this appeal. The responding officer, Kirk Coligan, testified that Hill and Alvarez were arguing. When Officer Coligan asked both of them to “get back and get down” in order to assess what was happening, Hill “approached [him] walking towards the front door like he was about to lay [sic] down on the ground in front of [him]. As soon as [Hill] reached that threshold of the doorway, he ran from [Coligan]” out the front door and “around another block of townhouses.” (J.A. 113.) Officer Coligan initially pursued Hill on foot, but broke off the pursuit because he had no back up and no reason to detain Hill at that time. Officer Coligan returned to the townhouse and spoke to Alvarez, who told him she and Hill had an argument after Hill told her there was a warrant out for his arrest. Alvarez provided Hill’s identity to the officer and gave the Lorton townhome as Hill’s address, indicating that he stayed with her and did not have a current permanent address elsewhere. Officer Coligan subsequently gave Sergeant Milam this information.[2]
*272 Although this incident provides only-background information to the subsequent entry of the townhouse, it is particularly significant because it provided the police with specific information that Hill knew of the arrest warrant, had previously attempted to flee from police, and therefore would likely seek to avoid them in the future. Courts have routinely observed that “officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts” when assessing the on-scene circumstances. See, e.g., United States v. Gay, 240 F.3d 1222, 1227 (10th Cir.2001) (quotation marks and citation omitted). This is true even where no specific information is available to suggest that the suspect will avoid the police; it is all the more true where, as here, there is specific evidence to support that belief.
The majority recites the testimony of Sergeant Milam and Officer Kroll that they did not believe Hill would be at the Lorton townhome and that the purpose of their visit was investigational. However, that account does not fully represent the record. The recited testimony is immaterial to the relevant inquiry not simply because it relates Sergeant Milam and Officer Kroll’s subjective beliefs, but because it also relates to views held prior to arriving at the townhouse. That partial testimony does not account for the circumstances the officers observed and encountered upon arriving at the scene. Our review is based on the totality of the circumstances known to the police at the time they entered the residence. Regardless of the reasons for initially arriving at a residence, police officers can encounter a variety of circumstances once on the scene that may or may not support the conclusion that they possessed the reasonable belief that a suspect would be inside his residence. E.g., United States v. Werra, 638 F.3d 326, 338-39 (1st Cir.2011) (focusing on evidence to support a reasonable belief the suspect was inside the house “at the time [the police officers] entered”); United States v. Veal, 453 F.3d 164, 167 (3d Cir.2006) (same); Gay, 240 F.3d at 1227 (same). Sergeant Milam and Office Kroll’s testimony neither supports nor detracts from the salient inquiry because their recited views were formed prior to arriving at the residence and assessing the situation first-hand.
To the extent that — as the majority expresses it — the subjective views of Sergeant Milam are relevant as “evidence of a reasonable reading of the objective facts from an experienced officer’s perspective,” Maj. Op. at 263 n. 1, the record shows Milam’s belief evolved from that relied on by the majority opinion. Sergeant Milam testified that he had a “sneaking suspicion” Hill would be inside the residence based on how events unfolded once he and the other officers arrived at the townhouse. (J.A. 164.) This “on-scene” assessment was formed precisely at the relevant moment of the proper inquiry as opposed to Sergeant Milam’s belief formed prior to going to the residence.
Next, the majority opinion points out that “the police had documented another primary residence for Hill based on [his] recent traffic citation, further lessening the chances that Hill would be present in the home.” Maj. Op. at 264. This conclusion is flawed for at least three reasons. First, it calls into question the issue whether the Lorton townhouse was Hill’s residence, which — as discussed above and the majority opinion agrees — is not at issue on appeal. The Lorton townhouse was Hill’s residence. Second, it conveniently ignores the information Hill actually provided to police at the time he received the traffic citation, which was that he no longer lived at the address listed on his driver’s license. That driver’s license address *273 was not the townhouse address. Third, it ignores Alvarez’s statement to police days before the search that Hill lived at the Lorton townhouse with her and did not have any other permanent residence.
The majority opinion next discounts the probative value of the noises the police heard from inside the Lorton residence as evidence that Hill was present. When the police arrived at the townhouse, Sergeant Milam knocked on the front door and announced that it was the police. He heard “voices or a TV inside” and “[a]t one point, it sounded like the door — the lock on the door was clicking, but I wasn’t for certain what that was.” (J.A. 138-39, 149-50; 164; 174.) No one responded to the officers’ repeated, loud knocking and announcing. Due to his familiarity with the general layout and size of the town-houses in that area, Sergeant Milam believed that “it would be pretty much impossible not to hear those knocks.” (J.A. 152.)
The noises the police officers heard from inside the townhouse are similar to the noises identified in other cases as part of the totality of the circumstances test. Contrary to the majority opinion’s implication, there is no requirement that noises be “responsive” to the officers’ knocking in order to be part of an objective basis for believing that an individual is present. See, e.g., United States v. Lloyd, 396 F.3d 948, 952 (8th Cir.2005) (police heard “a fan and other noises,” which subsequently turned out to be from a dog); Valdez v. McPheters, 172 F.3d 1220, 1226 (10th Cir. 1999) (listing “operation of lights or other electrical devices” as one factor suggesting the presence of an individual inside an unresponsive residence); see also United States v. Phillips, 593 F.2d 553, 556 (4th Cir.1978) (in a case pre-dating Payton, holding “[ejmanation of a noise from the second floor strengthened [the officers’] conviction of the presence of someone in the apartment,” even though the noise was not identified).
Another of the majority opinion’s misleading interpretation of the facts concerns Alvarez’s statements to Sergeant Milam during their telephone conversation. The testimony at the suppression hearing showed that when no one responded to the knocks, Sergeant Milam called Alvarez’s cell phone. Alvarez indicated that she was not at home and that “her sister should be home.” (J.A. 102, 140-42, 150-51.) The majority opinion casts this testimony as Alvarez “indicating] that she was at work and that the only person who could be at the Lorton townhouse was her sister.” Maj. Op. at 261 (emphasis added). The record reflects this characterization is incorrect; Alvarez neither included nor excluded Hill as being in the townhouse. At most, Alvarez’s testimony indicates she had no first-hand knowledge because she was not at the townhouse, and that she believed her sister may be there.
Here, Alvarez was at work, and thus had no way of ensuring the veracity of her statements to the police. Instead, she could only offer her belief based on the information she believed to be true at the time. Significantly, and contrary to the majority opinion’s interpretation of her statements, Alvarez offered no tangible information that would lead the police to conclude Hill could not be inside the residence. Viewing all the circumstances, courts have held there to be a reasonable belief to proceed with entering a residence even where an individual on-the-scene states that the suspect is probably — or even definitively — not inside, where other circumstances support a contrary conclusion. See e.g., Veal, 453 F.3d at 166 (concluding “reason to believe” existed despite suspect’s wife answering the door and informing the police that her husband was not at home); Lloyd, 396 F.3d at 952 *274 (concluding “reason to believe” existed despite a neighbor telling the officers he did not think the suspect was home even though he had been there earlier in the day).
At bottom, the majority’s review of the factual basis for the officers’ determination that Hill was inside the Lorton townhouse does not accurately and fully reflect the facts developed in the district court and does not state those facts in the light most favorable to the Government. Properly viewed, the record below established at least the following facts:
• Hill had fled police at the Lorton townhouse twelve days earlier;
• No one responded to the officers’ repeated, loud knocks and announcement as to their presence;
• The townhouse was small and laid out in such a way that an individual inside should hear the knocks;
• Police heard noises — voices or possibly the television — inside the townhouse, and at one point an officer believed he heard a lock turning; and
• Alvarez was not at the Lorton townhouse, but thought that her sister may have been inside.
In addition to these facts, at least two permissible inferences also existed — Hill would most likely not respond to the police if he was inside the residence, and Alvarez’s sister had no known reason not to answer the door.
III.
The foregoing facts, viewed in light of the Supreme Court’s instruction in Pay-ton, lead me to conclude that the district court did not err in holding that the police had reason to believe Hill was inside the Lorton townhouse at the time they entered. Although there is scant Fourth Circuit precedent available, persuasive authority from other Circuit Courts of Appeals is helpful in applying the standard set forth in Payton.
At the outset, I note that the majority opinion wrongly articulates how courts are to assess whether the police had reason to believe the suspect was inside the residence. It states that courts within the Fourth Circuit “have sanctioned entry only where multiple facts support a reason to believe that the subject of the arrest warrant is present at the time of entry.” Maj. Op. at 264. The first case referenced, United States v. Young, 609 F.3d 348 (4th Cir.2010), is inapposite because the parties did not dispute that the police had reason to believe the subject of the arrest warrant was present. Id. at 353 (‘Young does not contend ... that the police lacked reason to believe he was inside the house.”). The only issue in the ease was whether a twenty-second delay between the “knock and announce” and entry was sufficient. Id. No reading of Young can sustain it as authority for the proposition stated by the majority.
The second case cited, United States v. Morgan, No. 92-5068, 1992 WL 203950, at *1, 1992 U.S.App. LEXIS 20235, at *2 (4th Cir. Aug. 24, 1992) (unpublished), is unpublished, and of course lacks precedential weight. Moreover, a case where the defendant is observed running toward his house just before the police then observe lights in the house turning off, hardly sets out the outer limits of the Payton inquiry. Id. Payton does not hold, and indeed no court applying it has ever held, that the police must have seen the defendant nearby or have actual knowledge that he is inside a residence before they can enter. See, e.g., Gay, 240 F.3d at 1227 (“The officers are not required to actually view the suspect on the premises.”) (citation omitted); Valdez, 172 F.3d at 1226 (“Direct surveillance or the actual viewing of *275 the suspect on the premises is not required.”); United States v. Terry, 702 F.2d 299, 319 (2d Cir.1983) (noting that the Second Circuit previously “rejected the contention that the police must first conduct a thorough investigation to obtain evidence of an arrestee’s actual presence before entering his residence.”).
Instead, as Payton and courts in other circuits have observed, the test is a totality-of-the-cireumstances analysis. The analysis does not require a court to find a certain number of facts, and could be based on one fact bearing sufficient gravitas. We are not called to itemize the factors favoring and opposing the conclusion purely to assess which side is greater in number. Instead, as the Tenth Circuit noted in Valdez, we are called to be
sensitive to common sense factors indicating a resident’s presence. Direct surveillance or the actual viewing of the suspect on the premises is not required. Indeed, the officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts. The suspect’s presence may be suggested by the presence of an automobile, the time of day, observing the operation of lights or other electrical devices, and the circumstances of a suspect’s employment. And the officers may consider an absence of evidence the suspect is elsewhere. No single factor is, of course, dispositive. Rather, the court must look at all of the circumstances present in the case to determine whether the officers entering the residence had a reasonable belief that the suspect resided there and would be found within.
172 F.3d at 1226 (internal quotation marks and citation omitted).
Here, as detailed above, the police had sufficient reason to believe Hill was inside the townhouse based on several pieces of information. This is not the situation identified in the majority opinion where the police “solely reified] on an unidentified noise coming from within the home” as the basis for their entry. Maj. Op. at 265. The officers knew Hill would likely try to hide from them because he had fled the residence a few days before upon seeing police approach the townhouse. They had a reasonable basis on which to conclude that an individual inside the house would hear their knocks, they heard noises like voices emanating from inside the home, and Alvarez was not at home to confirm or deny Hill's presence. Similarly, as the district court found, if Alvarez’s sister was present, she had no reason not to answer the door, while Hill had every reason not to do so. The police were not required to ascertain that Hill was, in fact, inside the residence; they are only required to have “reason to believe” he was there. Viewed in the totality, this record satisfies the standard set forth in Payton.
For the foregoing reasons, I respectfully dissent. I would affirm the district court’s judgment finding that the entry satisfied the requirements of the Fourth Amendment.[3] As to the second issue Hill raises on appeal, I concur with the majority’s conclusion in section II.C. as to the validity of the consent Alvarez gave to police to search her residence. Because I conclude that the initial entry and protective sweep were constitutional, the taint issue raised by the majority is not before the court.[4] I *276 would therefore affirm the district court’s denial of Hill’s motion to suppress the evidence seized from the Lorton townhouse and would affirm the judgment rendered.

. The majority opinion correctly notes a split among the circuits as to what constitutes the “reason to believe” standard. See Maj. Op. at 262-63. No published Fourth Circuit case has previously addressed the application of Payton in this regard, but I agree with the majority that this is not the proper case to address this issue.

. While the majority recites this encounter, it fails to note that Hill fled the residence upon seeing Officer Coligan.

. Since the police entry satisfied Payton, I do not believe it is necessary to address the district court's alternative holding that the police were justified in entering based on exigent circumstances, although I concur with the majority’s analysis in section II.B. that the district court erred in that analysis.

. Even if a remand to consider the “taint” issue were appropriate, it is an issue never *276 raised to, argued in, or addressed by the district court. The majority’s speculation on what the district court should do on remand is thus unnecessary and speculative.