**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-5018

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OSCAR OMAR LOBO-LOPEZ, a/k/a Joker,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:08-cr-00194-TSE-1)

Argued:  December 7, 2011          Decided:  March 1, 2012

Before SHEDD, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Lana Marie Manitta, RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP, Alexandria, Virginia; John Cady Kiyonaga, KIYONAGA & KIYONAGA, Alexandria, Virginia, for Appellant. Morris Rudolph Parker, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Patricia T. Giles, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On May 5, 2007, MS-13 member Oscar Omar Lobo-Lopez shot 18th Street member Melvin Reyes with a .380 caliber semi-automatic handgun while he and another MS-13 member, Amador, pursued Reyes. When Reyes fell to the ground, Lobo-Lopez stood by while Amador used his .38 caliber revolver to kill Reyes with several shots at close range. The two men then fled the scene in a car with three other MS-13 members.

A federal grand jury charged Lobo-Lopez with conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5); murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1); and use of a firearm during a crime of violence causing death, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A), (j). On April 21, 2009, a jury found Lobo-Lopez guilty on all three counts.

Lobo-Lopez now appeals his conviction, alleging that the district court erred in admitting expert testimony and in denying his motions to compel discovery, motion for judgment of acquittal, and motions for a new trial. We address each of his contentions in turn and affirm the district court.

I.

Prior to trial, Lobo-Lopez moved to compel discovery of the identity of individuals who provided information to the

2

government regarding Reyes's murder, asserting that Brady v. Maryland, 373 U.S. 83 (1963), required disclosure.  The district court granted Lobo-Lopez's motion as to two of the individuals, but denied it as to the others.  "In reviewing the district court's denial of [a] Brady motion, we review its legal conclusions de novo and its factual findings for clear error." United States v. King, 628 F.3d 693, 702 (4th Cir. 2011).

Brady requires prosecutors to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment."  373 U.S. at 87. Accordingly, prosecutors violate Brady when they fail to disclose impeachment material or exculpatory evidence that with reasonable probability would change the outcome of the trial. United States v. Bagley, 473 U.S. 667, 682 (1985).  To establish a Brady violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281–82 (1999).

As the district court noted, although we have previously indicated that knowledge of an eyewitness's identity may constitute Brady material that is "favorable to the accused," see, e.g., Monroe v. Angelone, 323 F.3d 286 (4th Cir. 2003); Sennett v. Sheriff of Fairfax Cnty., 608 F.2d 537 (4th Cir.

3

1979), we have also ruled that Brady does not require disclosure of such information on "the remote possibility that [it] would . . . help[] the defense," United States v. Polowichak, 783 F.2d 410, 414 (4th Cir. 1986).

Here, the district court denied Lobo-Lopez's motion as to the individuals that form the subject of his appeal because he neglected to show that the individuals' likely testimony would prove exculpatory. For example, Lobo-Lopez requested disclosure of the identity of Witnesses #8, 9, 11, and 21 because they were "eyewitnesses to the offense and/or the perpetrators' actions directly before and after the shooting." Lobo-Lopez argued that the government "fail[e]d to pursue an identification of the perpetrators" because it did not ask these eyewitnesses to select the perpetrators from a photo array. Moreover, he asserted that access to these individuals would prove "material and helpful to the defense."

Similarly, as to Witnesses #14, 17, 19, 20, 21, and ASO 17, Lobo-Lopez argued that because these individuals "provided information to police about threats made against the victim by various persons," their testimony "increas[ed] the pool of potential shooters" and access to their identity would be "relevant and helpful to the defense." Nevertheless, the district court declined to grant Lobo-Lopez's motion because he failed to "show[] that these individuals' likely testimony would

4

either tend to exculpate . . . Lobo-Lopez or impeach the credibility of one of the government's witnesses."

Finally, as to Witness #11, Lobo-Lopez maintained that because Witness #7 reported that Witness #11 saw three individuals in a breezeway prior to the shooting and the only individual holding what Witness #11 thought was a .38 caliber revolver did not match Lobo-Lopez's description at the time, access to Witness #11's identity could produce exculpatory testimony or testimony that would impeach Witness #7, who "stated that two individuals in the breezeway had guns." But the district court declined to hold that Witness #11's testimony would prove exculpatory, reasoning that because "one of the other individuals Witness [#]11 described as helping to load the gun could [have been] Lobo-Lopez" and because "the government's theory of the case [was] that the victim was killed by two shooters, one with a .38 revolver and one with a [.]380 handgun, Witness [#]11's likely testimony [would] not [be] favorable for . . . Lobo-Lopez."

Our review of the district court's decision indicates that it carefully considered the likely testimony that each of these individuals would offer and whether that testimony would impeach a government witness or prove exculpatory. Although we recognize that Witness #11 might have impeached Witness #7, we cannot conclude that such impeachment would have changed the

5

outcome of the trial.  Accordingly, we hold that the district court did not err in denying Lobo-Lopez's motion.

## II.

Lobo-Lopez also made a pre-trial motion to disallow expert testimony by Detective Saa and now appeals the district court's denial of that motion.  Lobo-Lopez contends (1) that Saa lacked qualifications to testify as an expert and (2) that Saa's testimony constituted hearsay and violated the Confrontation Clause.

"We review for abuse of discretion the district court's decision to admit expert testimony under Federal Rule of Evidence 702."  United States v. Wilson, 484 F.3d 267, 273 (4th Cir. 2007).[1]  Lobo-Lopez avows that Saa lacked appropriate credentials to testify as an expert because the formal education listed on his curriculum vitae consisted of instruction from "a

---

[1] Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

6

state approved Criminal Justice Academy" and "specialized training in the investigation and interdiction of street gangs." We disagree.

Saa is a detective with the Herndon Police Department, Criminal Investigation Section, and has been assigned to the Northern Virginia Regional Gang Task Force since 2007. Saa's duties include "the investigation [and] information dissemination of gang intel and gang investigation." Approximately eighty-five percent of Saa's gang investigation focuses on MS-13. Saa has received training at conferences on the investigation of gangs' criminal activity in the United States and in El Salvador. He has also provided training to other law enforcement officers on MS-13 and 18th Street. Saa has led MS-13 investigations and conducted surveillance on MS-13 gang activity. He testified that he has participated in surveillance of MS-13 activity approximately fifty times and that he has interviewed approximately fifty MS-13 members during his career.

Rule 702 does not require that a court rely solely on an individual's education to qualify him as an expert. Rather, "the text . . . expressly contemplates that an expert may be qualified on the basis of experience." Id. at 274 (quoting Fed. R. Evid. 702 advisory committee's note) (internal quotation marks omitted). Here, Saa testified to extensive experience in

investigating MS-13, surveilling MS-13, interviewing MS-13 members, and training law enforcement on MS-13 and 18th Street. Accordingly, we cannot conclude that the district court abused its discretion in qualifying Saa as an expert on MS-13.

Nor do we conclude that the district court abused its discretion in admitting Saa's testimony over Lobo-Lopez's contention that it was hearsay and violated the Confrontation Clause. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004). Notably, however, although "Crawford forbids the introduction of testimonial hearsay as evidence in itself, . . . it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009). "An expert witness's reliance on evidence that Crawford would bar if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." Id.

Significantly, although Lobo-Lopez contends that Saa's testimony violated the Confrontation Clause, he neglects to cite any examples of problematic statements. Our review of Saa's testimony indicates that he did not simply act as a conduit for transmitting testimonial hearsay, but instead offered statements that "shed light on" the internal structure, rules, terminology, and methods of MS-13. Accordingly, we conclude that his testimony comported with Crawford and affirm the district court's decision to admit it.

III.

During trial, Lobo-Lopez requested a jury instruction that required the government to prove that MS-13 has a substantial effect on interstate commerce, and the district court denied the request. We review de novo whether a district court properly instructed a jury on the statutory elements of an offense, United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996), but we review the content of the instruction and a court's decision to give it for abuse of discretion, United States v. Lighty, 616 F.3d 321, 366 (4th Cir. 2010).

A district court's refusal to give a proffered jury instruction is reversible error when the instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so

important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." Id. (quoting United States v. Passaro, 577 F.3d 207, 221 (4th Cir. 2009)) (internal quotation marks omitted).

Establishing a § 1959 claim requires the government to prove beyond a reasonable doubt

> (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994) (quoting United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992)) (internal quotation marks omitted). A RICO "'enterprise' includes . . . any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2).

Lobo-Lopez claims that a circuit split exists regarding whether a criminal enterprise must have a substantial effect on interstate commerce or a de minimus effect. But we have previously indicated that "evidence of [an] enterprise's connection with interstate commerce" need not be "copious" and that the "standard required to satisfy the interstate commerce requirement" is "minimal." United States v. Gray, 137 F.3d 765,

10

772–73 (4th Cir. 1998); see also United States v. Crenshaw, 359 F.3d 977, 985 n.3 (8th Cir. 2004) (citing Gray and noting that "other courts have held that the enterprise need only have a minimal effect on interstate commerce in individual cases under § 1959"). Because Lobo-Lopez's proposed instruction was incorrect, we conclude that the district court did not abuse its discretion in declining to give it.

IV.

Lobo-Lopez complains that the government failed to prove that MS-13 is an enterprise as required for establishment of a § 1959 claim and appeals the district court's denial of his motion for judgment of acquittal and a new trial on that basis.

"We review the denial of [Lobo-Lopez's] motion for judgment of acquittal de novo." United States v. Hickman, 626 F.3d 756, 762 (4th Cir. 2010). "'[V]iewing the evidence in the light most favorable to the [g]overnment,' we are to determine whether the conviction is supported by 'substantial evidence,' where 'substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion . . . beyond a reasonable doubt.'" Id. (first alteration in original) (citation omitted) (quoting United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010); United States v. Bynum, 604 F.3d 161, 166 (4th Cir. 2010)). We review

11

the denial of a motion for a new trial for abuse of discretion. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006).

As noted above, a RICO "'enterprise' includes . . . any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). "Such an enterprise may be any group of individuals associated in fact, and the earmarks of association are 'continuity, unity, shared purpose, and identifiable structure.'" Gray, 137 F.3d at 772 (quoting Fiel, 35 F.3d at 1003).

Lobo-Lopez argues that the government failed to present substantial evidence of an enterprise because (1) "[n]o government witness described a global mission, common purpose[,] or undertaking uniting members of MS-13[] beyond the diffuse commission of violent acts," and (2) no "witness describe[d] any structure of leadership or means of coordinated action for MS-13." Contrary to Lobo-Lopez's contention, however, the government presented substantial evidence of MS-13's "continuity, unity, shared purpose, and identifiable structure."

Saa relayed that MS-13 exists "[t]hroughout the United States, and in Central America and in Canada" and that its purpose "is to instill fear and terror in the community" by committing violent acts. He also indicated that MS-13 "has its

12

own distinct separate cliques, and it has a leadership structure within those cliques." Saa further testified that members identify themselves by wearing blue and white, through handshakes, and sometimes with tattoos; and that members are instructed to follow rules such as not cooperating with law enforcement, attacking rival gang members "on sight," and never leaving "a fellow gang member behind." Violating these rules results in a "physical beating" or death. Additionally, another government witness testified that individuals join MS-13 through an initiation process known as "jumping in," where gang members beat the initiant, and after joining, they attend clique meetings and pay dues.

In our view, such testimony provides evidence that "a reasonable finder of fact could accept as adequate and sufficient" to conclude that MS-13 is an enterprise. Accordingly, we hold that the district court did not err in denying Lobo-Lopez's motions for judgment of acquittal and a new trial on the ground that the government failed to prove that MS-13 is an enterprise.

V.

Approximately two months prior to Lobo-Lopez's trial, Amador pled guilty to murdering Reyes. Amador subsequently told the government details about the circumstances of the murder and

13

implicated three other MS-13 members—Flecha, Snarf, and Ciego—in addition to himself and Lobo-Lopez. In March 2009, the government located Flecha at a detention facility in New York and attempted to interview him about the murder, but Flecha refused to comment on the murder.

The government interviewed Ciego in late March 2009. Ciego confirmed that he, Flecha, and Snarf were involved in the murder, but denied Lobo-Lopez's and Amador's involvement. Ciego also implicated a young MS-13 member, but claimed that he could not remember his name. Within days of receiving this potentially exculpatory information, the government told defense counsel what Ciego shared and provided his name and address. Defense counsel subsequently contacted Ciego and informed the government that although Ciego intended to invoke his Fifth Amendment right against self-incrimination, counsel would nonetheless introduce Ciego's exculpatory statements under a hearsay exception. At trial, however, counsel made no attempt to introduce the statements.

After trial, Lobo-Lopez, alleging a Brady violation, moved to compel disclosure of "all FBI 302s reporting statements pertaining to [specified witnesses, including Ciego and Flecha],[2]

---

[2] Although Lobo-Lopez named several individuals in his motion, his appeal, with the exception of a brief point (Continued)

14

as well as any documents reflecting or pertaining to any alleged participation in or knowledge of the crime by any of them, and any documentation pertaining to the whereabouts—or any change thereof—of any of them since May 5, 2007." The district court denied this motion, stating that (1) knowledge of Flecha's identity and contact information was unlikely to prove exculpatory because Flecha "offered the government no information relating to the Reyes murder, let alone information supporting defendant's case" and (2) the government had disclosed all exculpatory information that it received regarding Ciego. Lobo-Lopez also filed a motion for a new trial on similar grounds, but the district court denied this motion as well.

On appeal, Lobo-Lopez asserts that the district court erred. He first contends that access to all of the FBI 302s regarding Ciego would have aided his decision about whether to present Ciego's exculpatory statements at trial and would have supplied "background information providing others with a motive for the crime." He also contends that access to Flecha's identity and contact information could have provided statements that "would have impeached the only acknowledged participant to

---

regarding one witness that was not raised below, addresses the district court's ruling only as to Flecha and Ciego.

15

have testified, co-defendant Dado," or that would have corroborated Ciego's account of events. We disagree. As to Ciego, the government promptly provided defense counsel with his name and contact information, and with his exculpatory statements. Accordingly, Lobo-Lopez had sufficient information with which to interview Ciego prior to trial and acquire the same information that the government obtained. Furthermore, because Flecha categorially declined to discuss the Reyes murder with the government, Lobo-Lopez cannot show that access to his identity and contact information would have proven exculpatory. Thus, we uphold the district court's decision to deny Lobo-Lopez's motions.

VI.

Finally, Lobo-Lopez argues that the district court erred in denying his motion for a new trial based on newly discovered evidence. We have specified five requirements for granting a new trial under Federal Rule of Criminal Procedure 33 for "newly discovered evidence":

> (a) The evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

16

<u>Mills v. United States</u>, 281 F.2d 736, 738 (4th Cir. 1960) (quoting <u>Johnson v. United States</u>, 32 F.2d 127, 130 (8th Cir. 1929)) (internal quotation marks omitted). Moreover, "a new trial should be granted only when the evidence weighs heavily against the verdict." <u>United States v. Arrington</u>, 757 F.2d 1484, 1486 (4th Cir. 1985). We review the denial of a motion for a new trial under Rule 33 for abuse of discretion. <u>United States v. Fulcher</u>, 250 F.3d 244, 249 (4th Cir. 2001).

After Lobo-Lopez's trial, an incarcerated MS-13 member "provided information to federal law enforcement officers about a hit on an 18th Street member" occurring in late summer 2007. The individual indicated that he was at a house frequented by gang members when "a call came in that an 18th St[reet] member had been killed." He indicated that Lobo-Lopez and Amador were at the house when the call came in and that "approximately 40 minutes later, two men came to the house and received congratulations." The individual identified one of the men who received congratulations in a photograph, but, notably, further investigation revealed that this man was incarcerated at the time of the Reyes murder. The individual also told law enforcement officers that he had spoken with Ciego in jail and that Ciego told him that (1) Lobo-Lopez was not present at the murder and (2) Amador pled guilty because his parents urged him

17

to and because he believed that "'too many witnesses' would say he was" present at the murder.

When Lobo-Lopez moved for a new trial based on this evidence, the district court denied the motion for two reasons. First, the court held that Lobo-Lopez had failed to satisfy the requirements of Rule 33 because the "new evidence [was] comprised entirely of inadmissible hearsay." Drawing on our precedent, the court noted that inadmissible evidence could not form the basis of a new trial motion. See United States v. MacDonald, 779 F.2d 962, 964 (4th Cir. 1985). At best, the court reasoned, "[t]he statements could only be admitted for an impeachment purpose and impeaching evidence is not a valid basis for a new trial."

Second, the court reasoned that even if the statements were admissible, they were "simply not credible in light of evidence that the . . . MS-13 member alleged by the inmate to have participated in the Reyes murder was actually incarcerated at the time of the murder." Accordingly, the court held that because the "evidence—if admissible—would be afforded little credence by a jury at a new trial," Lobo-Lopez failed to carry his burden of showing that the evidence "would likely result in acquittal."

We agree with the district court. The "newly discovered evidence" that Lobo-Lopez offered either was not based on

personal knowledge or was incredible.  Thus, it cannot meet the threshold necessary for granting a new trial and the district court did not abuse its discretion in concluding as much.

## VII.

For the foregoing reasons, we affirm Lobo-Lopez's conviction.

AFFIRMED